UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN PEREZ,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSTER INC., et al.,<br><br>   Defendants. | Case No. 15-cv-03885-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 22 |

  Plaintiff Benjamin Perez has filed a putative class action against Defendants Monster Inc. and two Best Buy entities (Best Buy Stores, LP and Bestbuy.com LLC) (collectively, "Best Buy"), based on Monster's sale of certain High-Definition Multimedia Interface ("HDMI") cables. The gist of the case is that Defendants purportedly claim that "1080p and 4K HDTVs will not work properly unless consumers use Monster HDMI cables with bandwidths of 18.0, 22.5 or 27.0 gigabits per second ('Gbps')" when, "[i]n fact, any HDMI cable with a bandwidth of just 10.2 Gbps can transmit all 1080p and 4K signals perfectly." Compl. ¶ 2. Currently pending before the Court is Defendants' motion to dismiss.

  Having considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion.

### I.  FACTUAL & PROCEDURAL BACKGROUND

  In the complaint, Mr. Perez alleges as follows.[1]

  "HDMI is a proprietary standard [which belongs to HDMI Licensing, LLC] for

---

[1] Although the Court has before it a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), both parties have submitted evidence outside the four corners of the complaint. The Court shall not consider any of this evidence.

transmitting digital video and audio from high definition ('HD') sources (e.g., digital cable boxes and Blu-ray players) to HD monitors (e.g., HDTVs)." Compl. ¶ 17. "The HDMI format was intended to streamline the numerous methods for transmitting digital video and audio signals then in use with a single connection and cable type that could transmit digital video, multi-channel surround audio and advanced control data through a single cable, thereby simplifying installation and clutter." Compl. ¶ 20.

Currently, HDMI cables have two basic classifications: "Standard" (Category 1) and "High Speed" (Category 2).[2] *See* Compl. ¶ 26. HDMI High Speed "is 'designed and tested to handle video resolutions of 1080p and beyond, including advanced display technologies such as 4K, 3D, and Deep Color.'" Compl. ¶ 28. "To qualify as 'HDMI High Speed,' an HDMI cable must have a bandwidth of 10.2 Gbps, meaning that it can transmit 10.2 billion bits of digital information per second." Compl. ¶ 27. "[A]ny HDMI cable with a bandwidth of just 10.2 Gbps can transmit all 1080p and 4K signals perfectly." Compl. ¶ 2.

Monster sells cable that meets the bandwidth requirement of 10.2 Gbps. It labels that cable "High Speed." But Monster also sells cable that exceeds that bandwidth. Those cables are labeled as follows:

- "Advanced High Speed" – bandwidth of 18.0 Gbps.
- "Ultra High Speed" – bandwidth of 22.5 Gbps.
- "Ultimate High Speed" – bandwidth of 27.0 Gbps.

*See* Compl. ¶ 32. According to Mr. Perez, these labels "have no established standard or meaning." Compl. ¶ 36 ("While HDMI Licensing, LLC created and regulates the term 'HDMI High Speed,' Monster invented the terms 'Advanced high Speed,' 'Ultra High Speed' and 'Ultimate High Speed' entirely from whole cloth.").

In or about March 2014, Mr. Perez purchased a Monster Ultra High Speed HDMI cable (22.5 Gbps) from a Best Buy retail store in Orange, California, for about $189. *See* Compl. ¶ 11. Before buying the product, Mr. Perez "carefully reviewed the product's packaging." Compl. ¶ 11.

---

[2] There are other categories of cables, *see* Compl. ¶ 26, but they are not relevant for purposes of this litigation – or at least for purposes of this motion to dismiss.

1  According to Mr. Perez, the product packaging falsely represented that a HDMI cable "with a
2  bandwidth exceeding 10.2 Gbps was needed to transmit video signals to his television," when in
3  fact 10.2 Gbps was all that was needed.  *See* Compl. ¶ 11; *see also* Compl. ¶ 31 ("Despite the fact
4  that any HDMI High Speed cable with a bandwidth of 10.2 Gbps can transmit a perfect digital
5  picture, Monster misrepresents to consumers that they need even faster cables for their HD
6  connections.").
7      Mr. Perez indicates that the above representations were made in the product packaging via
8  a chart that is "[o]n the back of the packaging of all [Monster's] HDMI cables."  Compl. ¶ 32
9  (emphasis added).  That chart is replicated below.



Compl. ¶ 32.  Notably, the chart includes the following statement: "Use This Bandwidth
Comparison Chart *To Get The Speed You Need*."  Compl. ¶ 32 (emphasis added).  According to
Mr. Perez, the implication is that, to get the speed you need for, *e.g.*, a 4K television, you need a
HDMI cable with at least a bandwidth of 18.0 Gbps.

    Mr. Perez also claims that Monster's chart above is "bunk" as established by the fact that
"Defendants[] have ramped up the bandwidth requirements on their Performance Chart over time.
According to Defendants, video connections that previously required only 17.8 Gbps now require
27.0 Gbps."  Opp'n at 14 (citing Compl. ¶ 35); *see also* Opp'n at 6.

    Based on, *inter alia*, the above allegations, Mr. Perez has asserted the following claims for

3

relief:

(1) Violation of the Magnuson-Moss Warranty Act ("MMWA"). See 15 U.S.C. § 2301 et seq.

(2) Breach of express warranty.

(3) Breach of the implied warranty of merchantability.

(4) Unjust enrichment.

(5) Negligent misrepresentation.

(6) Fraud.

(7) Violation of California's Consumer Legal Remedies Act ("CLRA"). See Cal. Civ. Code § 1750 et seq.

(8) Violation of California Business & Professions Code § 17200.

(9) Violation of California Business & Professions Code § 17500.

As Defendants point out, the above claims can generally be grouped into two categories: (1) the fraud-based claims and (2) the warranty-based claims.

## II. **DISCUSSION**

A. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim for relief.

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.

*Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

4

B.   Fraud-Based Claims

   1.   All Fraud-Based Claims

Defendants challenge all of the fraud-based claims[3] on the ground that the claims do not satisfy the requirements of either Federal Rule of Civil Procedure 8 or Rule 9(b). For the most part, the Court does not agree. Mr. Perez has adequately pled the "'who, what, when, where, and how'" of the alleged misconduct. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). According to Mr. Perez, a misrepresentation was made to him in or about March 2014, when he purchased a Monster Ultra High Speed HDMI cable (22.5 Gbps) from a Best Buy retail store in Orange, California, for about $189. *See* Compl. ¶ 11. The misrepresentation was made by Monster, through its product packaging for the cable. More specifically, the misrepresentation was made in a chart contained on the product packaging, and the packaging falsely implied the misrepresentation was that "a Monster Ultra High Speech HDMI cable with a bandwidth exceeding 10.2 Gbps was needed to transmit video signals to his television." Compl. ¶ 11. The representation was false because only a bandwidth of 10.2 Gbps is needed for 1080p and 4K HDTVs.[4]

The Court, however, agrees with Defendants that Mr. Perez's fraud-related allegations are lacking in one respect – reliance. In his complaint, Mr. Perez does state that he "carefully reviewed the product's packaging," that the packaging included a representation that "cable with a bandwidth exceeding 10.2 Gbps was needed to transmit video signals to his television," and that he "attributed value to the promised benefit and would not have purchased the Monster HDMI cable had he known that the promised benefit was illusory." Compl. ¶ 11. But under the specific circumstances of this case, these allegations are not sufficient to support reliance. For example, the chart on the product packaging indicates that a 1080p HDTV *can* use a 10.2 Gbps cable. Thus,

---

[3] This covers claims 5 through 9 – *i.e.*, negligent misrepresentation, fraud, violation of the CLRA, violation of § 17200, and violation of § 17500.

[4] The Court acknowledges that the representations on the chart address not only picture resolution (1080p or 4K) but also refresh rate and color depth. But Mr. Perez has implied in his complaint that, regardless of the refresh rate and color depth, the 10.2 Gbps bandwidth cable is adequate bandwidth requirements.

5

1  if Mr. Perez had a 1080p HDTV, there is a significant issue as to why he purchased a 22.5 Gbps
2  cable (especially as the chart references only a 4K television for 22.5 Gbps cable).
3        Both in his papers and at the hearing, Mr. Perez argued that reliance may be presumed so
4  long as a representation is material and, here, materiality can be inferred here because Monster
5  placed its chart on the "need for speed" "'prominently and conspicuously on the packaging of
6  every HDMI cable that it sells throughout the United States.'"  Opp'n at 7 (quoting Compl. ¶ 3).
7  While this argument is not necessarily without merit, the fact remains that Ms. Perez has pled that
8  he *did* actually rely, and therefore it is not unfair for him to substantiate his claim of actual
9  reliance.

      2.      <u>CLRA Claim</u>

      According to Defendants, the fraud-based CLRA claim should also be dismissed for independent reasons.  As reflected in the complaint, Mr. Perez invokes three different provisions of the CLRA – *i.e.*, Cal. Civ. Code § 1770(a)(5), (7), and (9).  The Court concludes that Mr. Perez has adequately stated a claim for relief based on two of the three provisions.

      A § 1770(a)(5) violation is adequately pled because the provision covers, *inter alia*, a representation that a good has characteristics, uses, and benefits that it does not have.  Here, Mr. Perez has alleged that Monster represented its cables with a bandwidth exceeding 10.2 Gbps are needed for 1080p and 4K HDTVs when that in fact is not true.  This states a claim under § 1770(a)(5).

      However, a § 1770(a)(7) violation is not adequately pled because the provision covers a representation that "goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Cal. Civ. Code § 1770(a)(7).  Here, Mr. Perez does not allege the cables themselves do not meet, *e.g.*, a particular quality.  *Cf. Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009).  Unlike subsection (a)(5), subsection (a)(7) does not appear to address representations about a product's use or benefit.

      Finally, a § 1770(a)(9) violation is adequately pled because the provision covers "[a]dvertising goods or services with intent not to sell them as advertised."  Cal. Civ. Code § 1770(a)(9).  Here, Mr. Perez asserts that Defendants did not sell the cables as advertised because,

1   "while Defendants advertised Monster HDMI cables as necessary for 1080p and 4K video

2   connections, they were not actually necessary for such connections." Opp'n at 5-6.

### 3. Negligent Misrepresentation Claim

Defendants further assert that there is an independent basis to dismiss, at the very least, the fraud-based negligent misrepresentation claim – more specifically, because of the economic loss rule. Mr. Perez did not respond to this substantive argument. Accordingly, the Court grants the motion to dismiss the negligent misrepresentation claim as unopposed.

### 4. Summary

With respect to the fraud-based claims, the Court dismisses with prejudice the § 1770(a)(7) claim and the negligent misrepresentation claim. All other fraud-based claims are dismissed without prejudice but Mr. Perez has leave to amend to address the deficiency regarding reliance.

## C. Warranty Claims

### 1. MMWA Claim

"The MMWA provides in relevant part that 'a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.'" *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 985 (N.D. Cal. 2014) (quoting 15 U.S.C. § 2310(d)); *see also Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) (stating that "the MMWA 'allows consumers to enforce [limited] written and implied warranties in federal court, [as provided in section 2310(d)(1),] borrowing state law causes of action'"). Although the parties have somewhat glossed over the distinction between "written warranty" and "implied warranty," that difference is critical for purposes of resolving the motion to dismiss the MMWA claim.

The MMWA defines "written warranty" as, *inter alia*, "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). In contrast, "implied warranty" is defined as

7

"an implied warranty arising under State law (as modified by sections 108 and 104(a)) [15 U.S.C. §§ 2308 and 2304(a)] in connection with the sale by a supplier of a consumer product." *Id.* § 2301(7).

In the instant case, Mr. Perez's MMWA claim does reference both a written warranty and an implied warranty (albeit the reference to the latter is cursory). *See* Compl. ¶¶ 50, 55. Therefore, the MMWA claim actually has two components.

For the reasons discussed below, Mr. Perez has adequately pled state law implied warranty claims, and therefore his MMWA claim based on an implied warranty is also adequately pled.

The written warranty claim, however, is a different matter. As noted above, "written warranty" is defined in the statute as, *inter alia*, "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to *the nature of the material or workmanship* and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A) (emphasis added). Courts have generally held that "[a] product description does not constitute a written warranty under the MMWA." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1004 (N.D. Cal. 2012) (Gonzalez Rogers, J.). "[S]tatements merely describing the materials contained in a product are not considered written warranties under the MMWA, [because] such statements do not guarantee performance or lack of defects." *Ruszecki v. Nelson Bach USA Ltd.*, No. 12-cv-495-L(NLS), 2015 U.S. Dist. LEXIS 151946, at *10 (S.D. Cal. June 25, 2015). Moreover, "[s]tatements indicating when or how to use a product, such as 'designed to act more like milk,' have similarly been held to be merely descriptive statements. [¶] Alternatively, statements promising a product can effectively achieve a specific result have been considered written warranties under the MMWA" – *e.g.*, "drug product labels such as 'Sleep Aid,' 'For Stress, Nervousness or Nervous Headache,' and 'Relieves Stress to Help You Sleep' constituted written warranties because they guaranteed stress relief would be performed to some degree." *Id.* Below are some examples where courts have held that there is no MMWA claim because at best the plaintiff has implicated only a product description or something akin to that:

- "Restores Enamel." *See Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378

8

(S.D.N.Y. 2014) (stating that this is not a promise of performance over time).

- "Doctor Tested, Doctor Approved." *See Dorsey v. Rockhard Labs., LLC*, No. CV 13-07557 DDP (RZx), 2014 U.S. Dist. LEXIS 132161, at *25 (C.D. Cal. Sept. 19, 2014). *But see id.* at *24-25 (but also concluding that "Sexual Performance Enhancer for Men" and "Fast & Effective" are "claims [that] relate to the nature of the product and are not mere product descriptions"; an ineffective product is a defective one).
- "All natural." *See Hairston v. S. Beach Beverage Co.*, No. 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279, at *18 (C.D. Cal. May 18, 2012).
- "Made in the USA." *See Greenfield v. Sears, Roebuck & Co.*, No. MDL-1703, 2012 U.S. Dist. LEXIS 39561, at *9-10 (N.D. Ill. Mar. 22, 2012).

In the instant case, Mr. Perez does not allege that a representation was made that the cables would meet a certain level of performance but failed to do so. Rather, instead of substandard performance compared to what was advertised, the claim is that the higher quality of cables are not needed as Monster represents. Mr. Perez points out that Monster promises that the cables will live forever, *see* Opp'n at 17, but Mr. Perez is not basing his MMWA written warranty claim on that specific promise.

Accordingly, the Court concludes that the MMWA claim, to the extent based on a written warranty, is futile and shall be dismissed with prejudice. The remainder of the MMWA claim is adequately pled.

2. <u>Express Warranty Claim</u>

Defendants' challenge to Mr. Perez's express warranty claim is similar to their challenge to the MMWA claim. According to Defendants, "Plaintiff's general allegation that he bought a cable with more bandwidth than he needed clearly is not a warranty because it is not an express guarantee of performance or capability." Mot. at 14. "[T]he only 'guarantee' found in the packaging materials is that the cables will transfer data at their represented speeds (10.2 Gbps, 18.0 Gbps, etc.)." Mot. at 14.

The problem for Defendants is that the MMWA has a specific definition for written warranty that is not necessarily applicable under state law.

9

Although Mr. Perez does not identify which state law he is implicating for his express warranty claim, U.C.C. Section 2-313(1) defines an express warranty (in relevant part) as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

U.C.C. § 2-313(1). The California Commercial Code uses the same language. *See* Cal. Com. Code § 2313(1); *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (stating that, "to prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached") (internal quotation marks omitted).

Given this broader definition of express warranty which encompasses a fact or promise "which relates to the goods," the Court declines to dismiss the state law express warranty claim. *Yastrab v. Apple Inc.*, No. 5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119 (N.D. Cal. Mar. 23, 2015), on which Defendants primarily rely, is not to the contrary. There, the court dismissed the express warranty claim only because it was not clear which particular advertisements and webpages were at issue; "[w]ithout more information, the exact terms of the purported warranty are not established with the requisite level of clarity." *Id.* at *21.

3. <u>Implied Warranty Claim</u>

The U.C.C. has a provision that covers implied warranties, not just express warranties. Under U.C.C. § 2-314, there is an implied warranty of merchantability.

> Goods to be merchantable must be at least such as
>
> (a) pass without objection in the trade under the contract description; and
>
> . . . .

10

      (c)     are fit for the ordinary purposes for which such goods are used; and

      . . . .

      (f)     conform to the promise or affirmations of fact made on the container or label if any.

U.C.C. § 2-314(2). The California Commercial Code uses the same language. *See* Cal. Com. Code § 2314(2).

Here, Defendants argue that "[t]he ordinary purpose of the Monster cables is to transfer data at the represented speeds," and "Plaintiff does not allege that his Monster cable failed to transmit data at the represented speeds." Mot. at 16. In response, Mr. Perez asserts that he is relying on subsections (a) and (f) above, not subsection (c), to support his implied warranty claim: "The packaging stated that 1080p and 4K HDTVs require monster HDMI cables with bandwidths exceeding 10.2 Gbps. That statement was untrue." Opp'n at 16. In reply, Defendants argue that case law reflects that, "collectively, [*all* of the above provisions] mean nothing more than that the product must lack the most basic degree of fitness to breach the implied warranty." Reply at 8 (emphasis added).

But Defendants' position is not supported by the U.C.C. comments. For example, the U.C.C. comments state that

> [s]ubsection (2) [quoted above] does not purport to exhaust the meaning of "merchantable" nor to negate any of its attributes not specifically mentioned in the text of the statute, but arising by usage of trade or through case law. The language used is "must be at least such as . . . ," and the intention is to leave open other possible attributes of merchantability.

U.C.C. § 2-314, comments. The U.C.C. comments also state:

> Paragraph (f) applies . . . wherever there is a label or container on which representations are made, even though the original contract, either by express terms or usage of trade, may not have required either the labeling or the representation. This follows from the general obligation of good faith which requires that a buyer should not be placed in the position of reselling or using goods delivered under false representations appearing on the package or container.

U.C.C. § 2-314, comments.

11

1     Defendants point to *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402 (2003), where the
2  court did look at the various provisions and then stated: "[The implied warranty] provides for a
3  minimum level of quality. Thus, a breach of the implied warranty of merchantability means the
4  product did not possess even the most basic degree of fitness for ordinary use." *Id.* at 406
5  (internal quotation marks omitted). But there is also case law to the contrary. For example, in
6  *Zakaria v. Gerber Products Co.*, No. LA CV15-00200 JAK (Ex), 2015 U.S. Dist. LEXIS 80428
7  (C.D. Cal. June 18, 2015), the court noted that

> Plaintiff's breach of implied warranty claim is based on alleged affirmative representations made by Defendant on the labeling of the formula. Thus, the claim is not based on an alleged failure by Defendant to conform to the intended purpose of infant formula in general. Therefore, the claim is one that is appropriate under Cal. Commercial Code § 2314(2)(f), which modifies the common law definition of merchantability.

*Id.* at *30-31. Here, as stated in subsection (f), Mr. Perez alleges a false promise or affirmation of fact made on the container or label.

Accordingly, the Court shall not dismiss the state law implied warranty claim.

D.  Miscellaneous Claims

   1.  Unjust Enrichment Claim

Defendants argue that the claim for unjust enrichment should be dismissed because "[u]njust enrichment is not a cause of action under California law," but rather just a remedy. Mot. at 22. Defendants acknowledge (in a footnote) that, in *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), the Ninth Circuit stated as follows:

> [I]n California, there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution." However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." The return of that benefit is the remedy "typically sought in a quasi-contract cause of action." When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution."

*Id.* at 762. But, according to Defendants, "Plaintiff here does not assert a quasi-contract theory of

12

1 liability." Mot. at 22 n.7.

2 Defendants' argument lacks merit. The Ninth Circuit, in *Astiana*, allowed a court to construe an unjust enrichment cause of action as a quasi-contract cause of action, even if the plaintiff did not so identify. Mr. Perez's quasi-contract theory of liability is basically predicated on the alleged warranty. Accordingly, Mr. Perez's quasi-contract claim survives just as the express and implied warranty claims survive.

### 2. UCL Claim

The UCL claim is largely predicated on the other claims asserted by Mr. Perez in his pleading. Accordingly, as a derivative claim, the UCL claim rises or falls with the fraud-based and warranty-based claims.

## E. Best Buy

Finally, Best Buy moves for dismissal of all claims asserted against it on the ground that Mr. Perez has failed to adequately allege that it engaged in any wrongdoing or that it can be charged with Monster's conduct.

The allegations against Best Buy are as follows:

- "Monster places [its] misrepresentations prominently and conspicuously on the packaging of every HDMI cable that it sells throughout the United States. Best Buy affirms these misrepresentations at the time of sale." Compl. ¶ 3.

- "Best Buy advertises, promotes, distributes and sells Monster HDMI cables to hundreds of thousands of consumers in the United States, including at retail outlets in this district. Best Buy authorizes false and misleading representations about Monster HDMI cables through its officers, directors, and agents." Compl. ¶ 13.

As Best Buy contends, the allegations are thin and quite conclusory. There are no factual allegations indicating *how* Best Buy affirms or authorizes Monster's alleged misrepresentations. Likewise, there are no factual allegations as to *what* Best Buy says in its advertisements or promotions about Monster HDMI cables – *e.g.*, does it repeat the alleged misrepresentations in the chart? *See Dorfman v. Nutramax Labs., Inc.*, No. 13cv0873 WQH (RBB), 2013 U.S. Dist. LEXIS 136949, at *40 (S.D. Cal. Sept. 23, 2013) (stating that "[a] defendant's liability [under the UCL]

13

must be based on [its] personal participation in the unlawful practices and unbridled control over the practices[;] [s]imilarly, under the CLRA, a defendant's liability must be based upon participation or control in the alleged unlawful advertising scheme") (internal quotation marks omitted); *see also Dremak v. Iovate Health Scis. Grp., Inc.*, 299 F.R.D. 648, 657 (S.D. Cal. 2014) (noting that, "[t]o the extent that *Dorfman* can be read as holding that a retailer defendant who disseminates or repeats deceptive statements can be held liable under the UCL and CLRA for statements on product packaging that the retailer did not control, the Court disagrees . . . [;] [i]f a retailer goes above and beyond selling a product and displays additional promotional materials, the retailer arguably can be held liable for those specific advertisements, but should not be deemed to have adopted all representations made by the manufacturer about the product"). While Mr. Perez has provided evidence that Best Buy employees get training about Monster's cable products, *see* Arisohn Decl., Ex. C, that is evidence outside the four corners of the complaint. Moreover, the evidence says nothing about the substance of the training – *e.g.*, what Best Buy employees are told to tell customers about Monster's products.

Mr. Perez protests, in his opposition, that he has alleged in his complaint that, "[w]hile [he was] at the Best Buy store, a Best Buy employee affirmed the claimed benefits found on the packaging of the Monster HDMI cable that he purchased." Opp'n at 19. However, Mr. Perez cites ¶ 3 of the complaint to support this claim, and, as indicated above, ¶ 3 does not state such.

Once Mr. Perez's conclusory allegations are cast aside, Mr. Perez is basically left with the position that Best Buy is liable simply because it sells Monster's HDMI cables (*i.e.*, is a retailer for Monster). Mr. Perez has cited no authority to support the proposition that Best Buy can be held liable on this basis alone. *Compare, e.g.*, *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 334 (D.N.J. 2014) (concluding that plaintiff adequately pled a claim for relief under the New Jersey Consumer Fraud Act because of allegations that "the retailers adopted Whirlpool's misrepresentations as their own by promoting and selling the machines as Energy Star-compliant" – *e.g.*, retailers displayed the Energy-Star compliant labels).

Accordingly, all claims against Best Buy shall be dismissed but Mr. Perez shall be given leave to amend.

14

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. More specifically, the Court rules as follows:

(1) All claims against Best Buy are dismissed without prejudice. Mr. Perez has leave to amend but he may assert against Best Buy only those claims that have not been dismissed or for which the Court has given leave to amend.

(2) With respect to the fraud-based claims, all claims are dismissed. The § 1770(a)(7) claim and the negligent misrepresentation claim are dismissed with prejudice. All remaining fraud-based claims are dismissed without prejudice and Mr. Perez has leave to amend to address the reliance issue.

(3) With respect to the warranty-based claims, only the MMWA written warranty claim is dismissed, and with prejudice. All remaining warranty-based claims (including the MMWA implied warranty claim) survive this motion to dismiss.

Any amended complaint shall be filed within thirty (30) days from the date of this order. This order disposes of Docket No. 22.

**IT IS SO ORDERED**.

Dated: January 20, 2016

_____
EDWARD M. CHEN
United States District Judge

15