**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
         jarisohn@bursor.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN PEREZ, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>MONSTER INC., BEST BUY STORES, LP. and BESTBUY.COM, LLC,<br><br>                     Defendants. | **Case No.:** 3:15-cv-03885-EMC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1    Plaintiff Benjamin Perez ("Plaintiff") brings this action on behalf of himself and all others

2    similarly situated against Defendants Monster Inc. ("Monster") and Best Buy Stores, L.P. ("BBS")

3    and BestBuy.com, LLP ("BB.com") (collectively "Best Buy").  Plaintiff makes the following

4    allegations pursuant to the investigation of his counsel and based upon information and belief,

5    except as to the allegations specifically pertaining to himself, which are based on personal

6    knowledge.

7    <u>**NATURE OF ACTION**</u>

8    1.    This is a consumer protection and false advertising class action lawsuit brought on

9    behalf of purchasers of Monster brand High-Definition Multimedia Interface ("HDMI") cables.

10    2.    On the packaging of all Monster HDMI cables, Defendants misrepresent that 1080p

11    and 4K HDTVs[1] will not work properly unless consumers use Monster HDMI cables with

12    bandwidths of 18.0, 22.5 or 27.0 gigabits per second ("Gbps").[2]  In fact, any HDMI cable with a

13    bandwidth of just 10.2 Gbps can transmit all 1080p and 4K signals perfectly.  As noted by CNET,

14    a popular website for reviewing consumer electronics, "even the cheapest high-speed HDMI cable

15    can pass the maximum resolution possible with the current generation of Ultra HD 4K TVs."[3]

16    3.    Monster places these misrepresentations prominently and conspicuously on the

17    packaging of every HDMI cable that it sells throughout the United States.  As described below,

18    Best Buy affirms these misrepresentations at the time of sale through sales personnel, floor

19    displays and on its website.

20    4.    The false and misleading labels on Monster HDMI cables are highly material to

21    consumers and serve to differentiate Monster HDMI cables from those of other manufacturers.

22

23    [1] 1080p refers to a screen resolution of 1920x1080 (1,920 pixels in width and 1080 pixels in
      height) for a total of slightly over 2 million pixels.  4K refers to a resolution of 3840x2160, or
24    about 8.3 million pixels.

25    [2] Gbps stands for billions of bits per second and is a measure of bandwidth for digital data
26    transfers.

27    [3] Geoffrey Morrison, 4K HDMI cables (are nonsense), CNET.com (July 9, 2013), available at:
      http://www.cnet.com/news/4k-hdmi-cables-are-nonsense/ (last checked Aug. 24, 2015).
28

These labels allow Defendants to charge a price premium for Monster HDMI cables.  In fact, Monster HDMI cables command more than a 1,748% price premium compared to comparable Amazon HDMI cables:

| **Brand** | **Model** | **Length** | **Price** |
|---|---|---|---|
| Monster | Black Platinum Ultimate | 9 Feet | $119.99 |
| AmazonBasics | High-Speed HDMI Cable | 9.8 Feet | $6.49 |

5. Technology experts have regularly excoriated Monster for misleading consumers in this manner.  PC Magazine has found that high-priced HDMI cables like Monster's have no effect on video quality:  "Claims that more expensive cables put forth greater video or audio fidelity are nonsense; it's like saying you can get better-looking YouTube videos on your laptop by buying more expensive Ethernet cables.  From a technical standpoint, it simply doesn't make sense."[4]

6. CNET has agreed that, because of how digital technology works, expensive Monster cables do not provide consumers with any improvements in video quality:

> CNET strongly recommends cheap HDMI cables widely available from online retailers instead of the expensive counterparts sold in your local electronics store.  Here's why:
>
> **Expensive cables aren't worth it**
> If you walk into your typical electronics store to buy an HDMI cable, you're likely to see prices upward of $50 with promises of better performance and faster speeds.  Do you really need to spend that much money on a single HDMI cable?
>
> **Absolutely not--those cables are a rip-off**.  You should never pay more than $10 for a standard six-foot HDMI cable.  And despite what salesmen and manufacturers might tell you, there's no meaningful difference between the $10 cable and the $50 cable.[5]

7. PCWorld concurs, noting that "our tests indicate, you can expect flawless

---

[4] Will Greenwald, Slaying the Cable Monster: Why HDMI Brands Don't Matter, PCMag.com, available at: http://www.pcmag.com/article2/0,2817,2385272,00.asp (last checked Aug. 24, 2015).

[5] CNET's Quick Guide: HDMI and HDMI Cables, available at: https://web.archive.org/web/20131103111131/http://reviews.cnet.com/2719-11276_7-226-3.html (last checked Aug. 24, 2015).

performance from any 4-meter [13-foot] cable, regardless of price."[6]

8. CNET has likewise concluded that Monster is able to overcharge for its HDMI cables only because of its misrepresentations:

> Salespeople, retailers, and especially cable manufacturers want you to believe that you'll get better picture and sound quality with a more expensive HDMI cable. They're lying. You see, there's lots of money in cables. Your money. Dozens of reputable and disreputable companies market HDMI cables, and many outright lie to consumers about the "advantages" of their product. Worse, the profit potential of cables is so great, every retailer pushes high-end HDMI cables in the hopes of duping the buyer into spending tens, if not hundreds, of dollars more than necessary. Here's the deal: expensive HDMI cables offer no difference in picture quality over cheap HDMI cables.[7]

9. Lifehacker, a popular technology blog, agrees that Monster HDMI cables provide no additional benefits despite their promises of superior performance and inflated prices:

> High-priced HDMI cables are a complete rip-off and an utter waste of your money. HDMI is a digital signal. It either gets there or it doesn't. The only person who benefits from selling you a massively overpriced cable from Monster or a similar rip-off merchant is the manufacturer and the retailer.[8]

10. Plaintiff brings claims against all Defendants individually and on behalf of a class of all other similarly situated purchasers of Monster HDMI cables for (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, (2) breach of express warranty, (3) breach of the implied warranty of merchantability, (4) unjust enrichment, (5) fraud, (6) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*, (7) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.* and (8) violation of California's False Advertising Law ("FAL"), Business & Professions

---

[6] Sean Captain, The Cable Game, PCWorld, available at: http://www.pcworld.com/article /121777/article.html?page=2 (last checked Aug. 24, 2015).

[7] Geoffrey Morrison, Why All HDMI Cables Are The Same, CNET.com (Apr. 26, 2011), available at: http://www.cnet.com/news/why-all-hdmi-cables-are-the-same/ (last checked Aug. 24, 2015).

[8] Angus Kidman, Ask LH: Should I Buy Expensive HDMI Cables?, Lifehacker.com (Jan. 10, 2014), available at: http://www.lifehacker.com.au/2014/01/ask-lh-should-i-buy-expensive-hdmi-cables/ (last checked Aug. 24, 2015).

Code § 17500 *et seq.*

## PARTIES

11.     Plaintiff Benjamin Perez is a citizen of California who resides in Orange, California. In or about March 2014, he purchased a Monster Ultra High Speed HDMI cable from a Best Buy retail store in Orange, California for approximately $189.  Prior to his purchase of the HDMI cable, Mr. Perez carefully reviewed the product's packaging, which represented that a Monster Ultra High Speed HDMI cable with a bandwidth 22.5 Gbps was needed to transmit video signals to 4K televisions with a refresh rate of 30/60 Hz and 8-14 Bit Color.  Plaintiff saw this representation prior to and at the time of purchase, and understood it as a representation and warranty that the Monster HDMI cable could in fact provide the benefit promised.  At that time, a Best Buy sales representative explained to Plaintiff that purchasing an Monster Ultra High Speed 22.5 Gbps HDMI was a good idea because, unlike cheaper 10.2 Gbps HDMI cables, the Monster cable would not only work with his current 1080p television, but would also work with a 4K television should he decide to buy one later on.  Hoping to future-proof his purchase so that he would not have to buy another expensive HDMI cable or have to break open the drywall where his HDMI cable would be installed to switch out the cable when he eventually got a 4K television, Plaintiff decided to purchase a Monster Ultra High Speed 22.5 Gbps HDMI cable in reliance on Defendants' representation that the 22.5 Gbps cable was necessary for many 4K televisions.  Accordingly, Defendants' representation and warranty was part of the basis of the bargain, in that Plaintiff attributed value to the promised benefit and would not have purchased the Monster HDMI cable had he known that the promised benefit was illusory.  However, the Monster HDMI cable did not perform as represented.  In reliance on Defendants' representation and warranty, Plaintiff paid a tangible increased cost for the Monster HDMI cable, which was worth less than represented. Plaintiff also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant Monster and/or as the agent of Defendant Monster.  Plaintiff further understood that the purchase involved a direct transaction between himself and Defendant Monster because his purchase came with Monster's representation and warranty that a Monster Ultra High Speed HDMI cable with a bandwidth exceeding 10.2 Gbps was needed to transmit video signals to

4K televisions with 30/60Hz and 8-14 Bit Color.  Plaintiff believed that this statement was true and relied on it in that he would not have purchased a Monster HDMI cable at all, or would have only been willing to pay a substantially reduced price for a Monster HDMI cable, had he known that the representation was false and misleading.

12.     Upon information and belief, Defendant Monster Inc. is a California corporation with its principal place of business in Brisbane, California.  Defendant Monster researches, designs, markets and distributes HDMI cables nationwide, including at retail outlets in this District.

13.     Upon information and belief, Defendant Best Buy Stores, LP is a Minnesota corporation with its principal place of business in Richfield, Minnesota.  BBS is a consumer electronics retailer that advertises, promotes, distributes and sells Monster HDMI cables to hundreds of thousands of consumers in the United States, including at retail outlets in this district.  Best Buy authorizes false and misleading representations about Monster HDMI cables through its officers, directors and agents.

14.     Upon information and belief, Defendant BestBuy.com LLC is a Minnesota corporation with its principal place of business in Richfield, Minnesota.  BBS is an online consumer electronics retailer that advertises, promotes, distributes and sells Monster HDMI cables to hundreds of thousands of consumers in the United States, including at retail outlets in this district.  Best Buy authorizes false and misleading representations about Monster HDMI cables through its officers, directors and agents.

15.     Each of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in

1    controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class

2    member is a citizen of a state different from Defendants.

3            17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do

4    substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims

5    took place within this District (*e.g.*, the research, development, design and marketing of Monster

6    HDMI cables), Defendant Monster's principal place of business is in this District and it is

7    incorporated in the State of California.

8                                    **FACTUAL BACKGROUND**

9    **A.    Creation Of The HDMI Standard**

10           18.    HDMI is a proprietary standard for transmitting digital video and audio from high-

11   definition ("HD") sources (e.g., digital cable boxes and Blu-ray players) to HD monitors (e.g.,

12   HDTVs).

13           19.    Prior to the introduction of the HDMI standard and digital media, all video and

14   audio information was transmitted through analog signals travelling along analog cables.  Whereas

15   analog signals transmit video and audio through electric pulses of varying amplitude, digital signals

16   transmit information in a format that is processed into a binary stream with two distinct amplitudes

17   (ones and zeroes).

18           20.    Starting in the 1990s, video sources evolved from analog to digital through the

19   popularization of technologies such as digital cable and satellite television, DVDs and Blu-Ray.

20   Television sets also began to transition to digital, with the first HDTVs being sold to consumers in

21   approximately 1998.

22           21.    In 2002, leading consumer electronics manufacturers Hitachi, Panasonic, Philips,

23   Sony, Thomson and Toshiba contracted with a company called Silicon Image to form HDMI

24   Licensing, LLC through which they developed a new digital standard: High-Definition Multimedia

25   Interface, or HDMI.  The HDMI format was intended to streamline the numerous methods for

26   transmitting digital video and audio signals then in use with a single connection and cable type that

27

28

---

FIRST AMENDED CLASS ACTION COMPLAINT                                    6
3:15-cv-03885-EMC

could transmit digital video, multi-channel surround audio and advanced control data through a single cable, thereby simplifying installation and reducing clutter.

22.     HDMI Licensing, LLC sets the standards for HDMI devices and cables and licenses the technology to any manufacturer who wants to use it.

23.     HDMI has become the dominant standard for the transmission of digital video worldwide.  Since 2003, the HDMI Specification has been licensed by more than 1,300 HDMI Adopters who have gone on to manufacture over 4 billion HDMI-enabled products.

**B.      Digital Signals Either Work Perfectly Or Not At All**

24.     With analog signals, transmissions encounter various levels of noise and degradation as they move down the wire, causing picture quality to worsen.  As analog signals weaken, so too do analog video and audio outputs, causing analog picture quality to vary on a sliding scale.  High-quality analog cables are thus very important for obtaining optimum analog video and sound.

25.     Digital signals, on the other hand, work perfectly or not at all.  As long as the receiving end of a digital signal can interpret the binary stream of ones and zeroes being sent, the video produced will always be exactly the same, pixel for pixel.  If the signal does not work perfectly, the picture will go dark.



26.     This phenomenon is known as the "Cliff Effect" or the "Digital Cliff."  As a result of the error correction capabilities built into digital technology, so long as a digital signal has not degraded beyond a certain point known as the Digital Cliff, the picture quality will be perfect. Accordingly, there is no perceivable difference between any two properly functioning HDMI cables within the same category.

**C.     Monster Misrepresents The Need For Bandwidths Higher Than 10.2 Gbps**

27.     HDMI Licensing, LLC currently recognizes five separate categories of HDMI cables:  (1) HDMI Standard, (2) HDMI Standard with Ethernet, (3) HDMI Standard Automotive, (4) HDMI High Speed and (5) HDMI High Speed with Ethernet.  HDMI Standard cables are classified as Category 1, and HDMI High Speed cables are classified as Category 2.

    

28.     To qualify as "HDMI High Speed," an HDMI cable must have a bandwidth of 10.2 Gbps, meaning that it can transmit 10.2 billion bits of digital information per second.  A cable marked "HDMI High Speed with Ethernet" has the same capabilities but adds support for an HDMI ethernet channel.

29.     According to HDMI Licensing, LLC, any HDMI cable marked "HDMI High Speed" or "HDMI High Speed with Ethernet" is "designed and tested to handle video resolutions of 1080p and beyond, including advanced display technologies such as 4K, 3D, and Deep Color."[9]

30.     Manufacturers of the highest-end UHD 4K televisions and 4K media players, including Samsung, Sony, Toshiba, Vizio and LG, all also recommend that consumers use HDMI High Speed cables with their products; cables that, by definition, require only 10.2 Gbps of bandwidth.

31.     Cables meeting the requirements to be labelled HDMI High Speed regularly cost less than $10.

---

[9] "Deep Color" means the capability of producing more than a billion color variations.

32.     Despite the fact that any HDMI High Speed cable with a bandwidth of 10.2 Gbps can transmit a perfect digital picture, Monster misrepresents to consumers that they need even faster cables for their HD connections.  In fact, Monster's high-bandwidth HDMI cables fail to provide consumers with any benefits over HDMI cables with bandwidths of 10.2 Gbps.

33.     On the back of the packaging of all its HDMI cables, Monster prominently displays a chart entitled "THE NEED FOR SPEED" and either directs consumers to a comparison of "Bandwidth Requirements" or instructs them to "Use This Bandwidth Comparison Chart To Get The Speed You Need."  Monster's "Performance Chart" states that (1) "Advanced High Speed" cables with a bandwidth of ">18.0 Gbps" are needed to transmit a signal with "1080p, 120Hz, 16 Bit Color" or "4K, 30/60Hz, 8-12 Bit Color"; (2) "Ultra High Speed" cables with a bandwidth of ">22.5 Gbps" are needed to transmit a signal with "4K, 30/60Hz, 8-14 Bit Color"; and (3) "Ultimate High Speed" cables with a bandwidth of ">27.0 Gbps" are needed to transmit a signal with "4K, 60/120Hz, 8-16 Bit Color."



34.     Monster's website additionally warns consumers that "New 3D and 4k transmission requires cables that are many times faster."[10]

---

[10] *See, e.g.*, the product page for Monster Video ISF® 2000HD Hyper Speed HDMI Cable, available at: http://www.monsterproducts.com/Monster_Video_ISF_2000HD_Hyper_Speed_HDMI _Cable (last checked July 22, 2015).

35.     In fact, as described above, any HDMI High Speed cable with a bandwidth of just 10.2 Gbps can transmit all 1080p and 4K connections flawlessly.  Consumers who rely on Monster's Performance Chart, however, are deceived into purchasing one of Monster's Advanced High Speed, Ultra High Speed or Ultimate High Speed cables at a significant premium.

36.     The deceptive nature of Monster's performance chart is evidenced by the fact that its bandwidth requirements have been ramped up over time.  For instance, whereas Monster previously claimed that a bandwidth of ">17.8 Gbps" was needed to transmit a picture of "4Kx2K, 240/480 Hz, 8-16 Bit Color," it now claims that an HDMI cable with a bandwidth of ">27.0 Gbps" is needed for transmitting video with those very same specifications but with an even lower refresh rate.



37.     Monster's titles for its different bandwidth tiers are also intended to confuse and mislead consumers.  While HDMI Licensing, LLC created and regulates the term "HDMI High Speed," Monster invented the terms "Advanced High Speed," "Ultra High Speed" and "Ultimate High Speed" entirely from whole cloth.  These terms have no established standard or meaning.  By taking the official designation of "HDMI High Speed" and adding on an array of meaningless superlatives, Monster seeks to convince consumers that their cables carry some additional benefits even though they do not.  Reasonable consumers relying on Monster's Performance Chart inevitably conclude that not only do they need bandwidths exceeding 10.2 Gbps, but that they need cables marked "Advanced High Speed," "Ultra High Speed" or "Ultimate High Speed"—labels that only appear on Monster HDMI cables.

  

### D.  Best Buy Affirms Monster's Misrepresentations

38.     Best Buy affirms and builds on Monster's misrepresentation in its store displays, through its sales personnel and on its website.

39.     In its stores, BBS displays a bandwidth chart nearly identical to the one found on the packaging of Monster HDMI cables.  Just like on the packaging, these Best Buy displays instruct consumers to "[m]atch your cable to your components" for "[t]he speed you need":



**Best Buy Store Display**

40.     BBS sales personnel are also well-trained to repeat the supposed benefits of HDMI cables with bandwidths exceeding 10.2 Gbps.  Uniquely for a manufacturer, Monster acts as a "selling consultant[] to [its] retail partners like Best Buy," "teaching them really, about how to sell the higher margin Monster products to customers."[11]  In fact, Monster CEO Noel Lee and Monster conducts "actual classroom training sessions with Best Buy sales-floor personnel."[12]  Monster even maintains a Facebook page for its Best Buy training program with photographs of special training

---

[11] http://www.huffingtonpost.com/billrobinson/noel-lee-monster-how-itw_b_7776952.html (last checked February 9, 2016).

[12] *Id.*

events that Monster has held for Best Buy employees.[13]  Through these training sessions, Best Buy sales personnel are instructed on how to sell Monster HDMI cables largely by touting the supposed advantages of their higher bandwidths to unsuspecting consumers.

41.    BB.com likewise repeats Monster's representations on its website: [14]



42.    Separately, BB.com touts the need for higher-bandwidth HDMI cables:  "HDMI is still evolving.  As newer video formats like 3D and 4K Ultra HD require signals to be carried faster (measured in Gigabits per second, or Gbps), HDMI cables have increased capacity to keep up."[15]

43.    To this day, BestBuy.com tells consumers that, "[f]or the best high definition experience, use an HDMI cable that delivers all the picture and sound data that your HD components **require**," (emphasis added) and then provides the following chart titled "Meeting the Need for Speed" which states that more than 10.2 Gbps of bandwidth is required for resolutions greater than 1080p: [16]

---

[13] https://www.facebook.com/Monster-Training-Best-Buy-182650811876897/photos_stream (last checked February 9, 2016).

[14] *See* http://images.bestbuy.com/BestBuy_US/en_US/images/abn/brnd/brndstr/monster/ HDMI_Compare_Chart.pdf?h=488 (last checked February 9, 2016).

[15] *See* http://web.archive.org/web/20141223095729/http://www.bestbuy.com/site/buying-guides/regularcatpcmcat341800050016/pcmcat341800050016.c?id=pcmcat341800050016 (last checked February 9, 2016).

[16] *See* http://www.bestbuy.com/site/electronics-promotions/bringing-the-home-theater-home/pcmcat185900050064.c?id=pcmcat185900050064 (last checked February 9, 2016).

---

44.     BB.com again confirms this "need" by telling consumers that "[r]apid advancements in today's high definition components **demand** even higher speed HDMI cables so you get the best possible HD picture and sound" (emphasis added).[17]  BB.com then provides the following image:



45.     These promotional materials in Best Buy stores and on BestBuy.com, in addition to the sales pitches from Best Buy sales personnel, go well beyond merely selling a product that happens to contain a misrepresentation.  Best Buy has personally participated in making these

---

[17] *Id.*

1    misrepresentations and it exercised unbridled control over the misrepresentation made on its own

2    floor displays, on its own website and through its own sales personnel.

3                    **CLASS REPRESENTATION ALLEGATIONS**

4            46.    Mr. Perez seeks to represent a class defined as all persons in the United States who

5    purchased a Monster HDMI Cable (the "Class").  Excluded from the Class are persons who made

6    such a purchase for the purpose of resale.

7            47.    Mr. Perez also seeks to represent a subclass defined as all Class members who

8    purchased a Monster HDMI Cable from Best Buy (the "Best Buy Subclass").

9            48.    Mr. Perez also seeks to represent a subclass defined as all Class members who

10   purchased a Monster HDMI Cable in California (the "California Subclass").

11           49.    Members of the Class and Subclasses are so numerous that their individual joinder

12   herein is impracticable.  On information and belief, members of the Class and Subclasses number

13   in the tens of thousands.  The precise number of Class and Subclass members and their identities

14   are unknown to Plaintiff at this time but may be determined through discovery.  Class and Subclass

15   members may be notified of the pendency of this action by mail and/or publication through the

16   distribution records of Defendants and third party retailers and vendors.

17           50.    Common questions of law and fact exist as to all Class and Subclass members and

18   predominate over questions affecting only individual Class and Subclass members.  Common legal

19   and factual questions include, but are not limited to, whether Defendants' labeling, marketing and

20   promotion of the Mislabeled Products is false and misleading.

21           51.    The claims of the named Plaintiff are typical of the claims of the Class and

22   Subclasses in that the named Plaintiff purchased a Monster HDMI cable in reliance on the

23   representations and warranties described above and suffered a loss as a result of that purchase.

24           52.    Plaintiff is an adequate representative of the Class and Subclass because his interests

25   do not conflict with the interests of the Class or Subclass members he seeks to represent, he has

26   retained competent counsel experienced in prosecuting class actions and he intends to prosecute

27   this action vigorously.  The interests of Class and Subclass members will be fairly and adequately

28   protected by Plaintiff and his counsel.

FIRST AMENDED CLASS ACTION COMPLAINT                                    14
3:15-cv-03885-EMC

53.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class and Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
### Violation Of The Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, *et seq.*

54.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclasses against all Defendants.

56.     Monster HDMI cables are consumer products as defined in 15 U.S.C. § 2301(1).

57.     Plaintiff and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

58.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

59.     In connection with the sale of Monster HDMI cables, Defendants issued an implied warranty as defined in 15 U.S.C. § 2301(7), by making a false promise or affirmation on its container or label that Monster HDMI cables with bandwidths exceeding 10.2 Gbps are necessary for 1080p and 4K connections.

60.     Monster HDMI cables do not conform to the implied warranty because the implied warranty is false and misleading.  In fact, Monster HDMI cables with bandwidths exceeding 10.2

1    Gbps are not required to transmit 1080p and 4K signals and the additional bandwidth that they

2    provide, if any, delivers no benefit to consumers over HDMI cables with bandwidths of 10.2 Gbps.

3    61.    By reason of Defendants' breach of the implied warranty of merchantability,

4    Defendants violated the statutory rights due Plaintiff and the Class and Subclass members pursuant

5    to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and

6    the Class and Subclass members.

7    62.    Plaintiff and the Class and Subclass members were injured as a direct and proximate

8    result of Defendants' breach because (a) they would not have purchased the Monster HDMI cables

9    if they knew the truth about the product, and (b) the Monster HDMI cables they received were

10   worth substantially less than the cables that they were promised and expected.

11   63.    Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class and Subclass are entitled

12   to recover the damages caused to them by Defendants' breach of implied warranty, which either

13   constitute the full purchase price of the Monster HDMI cables or the difference in value between

14   the Monster HDMI cables as warranted and the Monster HDMI cables as sold.  In addition,

15   pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class and Subclass are entitled to recover a

16   sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual

17   time expended) determined by the Court to have been reasonably incurred by Plaintiff and the

18   Class and Subclass in connection with the commencement and prosecution of this action.

### COUNT II
### Breach Of Express Warranty

21   64.    Plaintiff hereby incorporates by reference the allegations contained in all preceding

22   paragraphs of this complaint.

23   65.    Plaintiff brings this claim individually and on behalf of the members of the

24   proposed Class and Subclasses against all Defendants.

25   66.    Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers,

26   expressly warranted that Monster HDMI cables with bandwidths exceeding 10.2 Gbps are

27   necessary for 1080p and 4K connections.

28

67.     In fact, Monster HDMI cables with bandwidths exceeding 10.2 Gbps are not required to transmit 1080p and 4K signals and the additional bandwidth that they provide, if any, delivers no benefit to consumers over HDMI cables with bandwidths of 10.2 Gbps.

68.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class and Subclass members have been injured and harmed because they would not have purchased the Monster HDMI cables if they knew the truth about the product and the Monster HDMI cables they received were worth substantially less than the cables that they were promised and expected.

## COUNT III
### Breach Of The Implied Warranty Of Merchantability

69.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclasses against all Defendants.

71.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that Monster HDMI cables with bandwidths exceeding 10.2 Gbps are necessary for 1080p and 4K connections.

72.     Defendants breached the warranty implied in the contract for the sale of Monster HDMI cables because they could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label."  *See* U.C.C. § 2-314(2) (listing requirements for merchantability).  As a result, Plaintiff and Class and Subclass members did not receive the goods as impliedly warranted by Defendants to be merchantable.

73.     Plaintiff and Class and Subclass members purchased Monster HDMI cables in reliance upon Defendants' skill and judgment in properly packaging and labeling the Monster HDMI cables.

74.     The Monster HDMI cables were not altered by Plaintiff or Class and Subclass members.

75.     The Monster HDMI cables were defective when they left the exclusive control of Defendants.

76.     Defendants knew that the Monster HDMI cables would be purchased and used without additional testing by Plaintiff and Class and Subclass members.

77.     The Monster HDMI cables were defectively designed and unfit for their intended purpose and Plaintiff and Class and Subclass members did not receive the goods as warranted.

78.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class and Subclass members have been injured and harmed because they would not have purchased the Monster HDMI cables if they knew the truth about the product and the Monster HDMI cables they received were worth substantially less than the HDMI cables they were promised and expected.

## COUNT IV
### Unjust Enrichment

79.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclasses against all Defendants.

81.     Plaintiff and Class and Subclass members conferred benefits on Defendants by purchasing Monster HDMI cables.

82.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass members' purchases of Monster HDMI cables.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that Monster HDMI cables with bandwidths exceeding 10.2 Gbps are necessary for 1080p and 4K connections.

83.     These misrepresentations caused injuries to Plaintiff and Class and Subclass members because they would not have purchased the Monster HDMI cables if the true facts were known.

84.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class and Subclass members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class and Subclass members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Fraud**

85.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

86.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclasses against all Defendants.

87.     As discussed above, Defendants provided Plaintiff and Class and Subclass members with false or misleading material information and failed to disclose material facts about Monster HDMI cables, including that Monster HDMI cables with bandwidths exceeding 10.2 Gbps are necessary for 1080p and 4K connections.

88.     The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class and Subclass members to purchase Monster HDMI cables.

89.     The fraudulent actions of Defendants caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT VI**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Civil Code §§ 1750, *et. seq.***

90.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

1    91.    Plaintiff brings this claim individually and on behalf of the members of the

2    proposed Class and Subclasses against all Defendants.

3    92.    Plaintiff and Class and Subclass members are consumers who purchased Monster

4    HDMI cables for personal, family or household purposes.  Plaintiff and Class and Subclass

5    members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

6    93.    The Monster HDMI cables that plaintiff and the Class and Subclass members

7    purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

8    94.    Defendant's actions, representations and conduct have violated, and continue to

9    violate, the CLRA because they extend to transactions that intended to result, or which have

10   resulted in, the sale of goods to consumers.

11   95.    Defendants' claims that Monster HDMI cables with bandwidths exceeding 10.2

12   Gbps are necessary for 1080p and 4K connections violate federal and California law because

13   Monster HDMI cables with bandwidths exceeding 10.2 Gbps are not required to transmit 1080p

14   and 4K signals and the additional bandwidth that they provide, if any, delivers no benefit to

15   consumers over HDMI cables with bandwidths of 10.2 Gbps.

16   96.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits

17   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses,

18   benefits, or quantities which they do not have or that a person has a sponsorship, approval, status,

19   affiliation, or connection which he or she does not have."  By engaging in the conduct set forth

20   herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because

21   Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or

22   practices, in that they misrepresent the particular characteristics, benefits and quantities of the

23   goods.

24   97.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with

25   intent not to sell them as advertised."  By engaging in the conduct set forth herein, Defendants

26   violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair

27   methods of competition and unfair or fraudulent acts or practices, in that they advertise goods with

28   the intent not to sell the goods as advertised.

98.     Plaintiff and the Class and Subclass members are not sophisticated experts with independent knowledge of electronics, HDMI or digital technology.  Plaintiff and the Class and Subclass members acted reasonably when they purchased Monster HDMI cables based on their belief that Defendants' representations were true and lawful.

99.     Plaintiff and the Class and Subclass members suffered injuries caused by Defendants because (a) they would not have purchased Monster HDMI cables on the same terms absent Defendants' illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for Monster HDMI cables due to Defendants' misrepresentations; and (c) Monster HDMI cables did not have the characteristics, benefits, or quantities as promised.

100.     On or about July 13, 2015, prior to filing this action, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a). Plaintiff sent Defendants, on behalf of himself and the proposed Class and Subclasses, a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

101.     Wherefore, Plaintiff seeks damages, restitution and injunctive relief for these violations of the CLRA.

## COUNT VII
### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

102.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

103.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclasses against all Defendants.

104.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and

1    include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or

2    misleading advertising . . . .”

3        105.    Defendants' claims that Monster HDMI cables with bandwidths exceeding 10.2

4    Gbps are necessary for 1080p and 4K connections violate federal and California law because

5    Monster HDMI cables with bandwidths exceeding 10.2 Gbps are not required to transmit 1080p

6    and 4K signals and the additional bandwidth that they provide, if any, delivers no benefit to

7    consumers over HDMI cables with bandwidths of 10.2 Gbps.

8        106.    Defendants' business practices, described herein, violated the "unfair" prong of the

9    UCL in that their conduct is substantially injurious to consumers, offends public policy and is

10   immoral, unethical, oppressive and unscrupulous, as the gravity of the conduct outweighs any

11   alleged benefits.  Defendants' advertising is of no benefit to consumers and has been declared

12   misleading by numerous experts in the field of electronics.

13       107.    Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiff and

14   the Class and Subclass members to believe that Monster HDMI cables with bandwidths exceeding

15   10.2 Gbps are necessary for 1080p and 4K connections.

16       108.    Plaintiff and the Class and Subclass members are not sophisticated experts with

17   independent knowledge of electronics, HDMI or digital technology.  Plaintiff and the Class and

18   Subclass members acted reasonably when they purchased Monster HDMI cables based on their

19   belief that Defendants' representations were true and lawful.

20       109.    Plaintiff and the Class and Subclass members lost money or property as a result of

21   Defendants' UCL violations because (a) they would not have purchased Monster HDMI cables on

22   the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were

23   known concerning Defendants representations; (b) they paid a price premium for Monster HDMI

24   cables due to Defendants' misrepresentations; and (c) Monster HDMI cables did not have the

25   characteristics or benefits as promised.

26

27

28

1
2

**COUNT VIII**
**Violation of California's False Advertising Law ("FAL"), Business &**
**Professions Code § 17500 *et seq.***

3       110.    Plaintiff hereby incorporates by reference the allegations contained in all preceding

4    paragraphs of this complaint.

5       111.    Plaintiff brings this claim individually and on behalf of the members of the

6    proposed Class and Subclasses against all Defendants.

7       112.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*,

8    makes it "unlawful for any person to make or disseminate or cause to be made or disseminated

9    before the public in this state, . . . in any advertising device . . . or in any other manner or means

10   whatever, including over the Internet, any statement, concerning . . . personal property or services,

11   professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

12   which is known, or which by the exercise of reasonable care should be known, to be untrue or

13   misleading."

14      113.    Defendants committed acts of false advertising, as defined by §§17500, *et seq.*, by

15   making misrepresentations that Monster HDMI cables with bandwidths exceeding 10.2 Gbps are

16   necessary for 1080p and 4K connections.

17      114.    Defendants knew or should have known through the exercise of reasonable care that

18   their representations about Monster HDMI cables were untrue and misleading.

19      115.    Defendants' misrepresentations and omissions concerned material facts, namely that

20   Monster HDMI cables with bandwidths exceeding 10.2 Gbps are necessary for 1080p and 4K

21   connections.  As such, Defendants' actions in violation of §§ 17500, *et seq.* were false and

22   misleading such that the general public is and was likely to be deceived.

23      116.    Plaintiffs and Class and Subclass members lost money or property as a result of

24   Defendants' FAL violations because:  (a) they would not have purchased Monster HDMI cables on

25   the same terms if the true facts about the cables were known; and (b) Monster HDMI cables did not

26   have the characteristics, uses, or benefits as promised.

27      117.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the

28

---

FIRST AMENDED CLASS ACTION COMPLAINT                                              23
3:15-cv-03885-EMC

conduct of Defendants' businesses.  Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their false advertising and to restore to Plaintiff and members of the Class and Subclasses any money Defendants acquired by unfair competition and for such other relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.      For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclasses and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.      For an order declaring that the Defendants' conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiff and the nationwide Class and Subclasses on all counts asserted herein;

d.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pleaded or as the Court may deem proper; and

h.      For an order awarding Plaintiff and the Class and Subclasses reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: February 9, 2016          **BURSOR & FISHER, P.A.**

By:   _/s/ L. Timothy Fisher_
        L. Timothy Fisher

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
      jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Joshua D. Arisohn (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
      jarisohn@bursor.com

*Attorneys for Plaintiff*

1        **CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2        I, Benjamin Perez, declare as follows:

3        1.     I am a plaintiff in this action.  I have personal knowledge of the facts stated herein

4 and, if called as a witness, I could and would testify competently thereto.

5        2.     The Complaint filed in this action is filed in the proper place because Defendant

6 Monster Inc. is headquartered and has its principal place of business in this District at 455 Valley

7 Drive Brisbane, CA 94005.  Defendants Monster Inc. and Best Buy Co., Inc. both also conduct

8 substantial business in this District.

9        3.     While living in California, I purchased a Monster HDMI cable for my household

10 and for my personal use.  I purchased the Monster HDMI cable after reading on the packaging that

11 I needed a Monster Ultra High Speed HDMI cable with a bandwidth exceeding 10.2 Gbps to

12 transmit video signals to my television.  This representation on the packaging was a substantial

13 factor influencing my decision to purchase a Monster HDMI cable.  I would not have purchased a

14 Monster HDMI cable, or would have only been willing to pay a substantially reduced price for a

15 Monster HDMI cable, had I known that Monster's representations were false.

16        4.     I declare under the penalty of perjury under the laws of the State of California that

17 the foregoing is true and correct, executed on August 24, 2015.

 

 

                            Benjamin Perez

**EXHIBIT A**

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

JOSHUA D. ARISOHN
Tel: 646.837.7103
Fax: 212.989.9163
jarisohn@bursor.com

July 8, 2015

*Via Certified Mail - Return Receipt Requested*

| Monster Inc. | Best Buy Co., Inc. | Best Buy Co., Inc. |
|---|---|---|
| 455 Valley Drive | 7601 Penn Avenue South | c/o C T Corporation System |
| Brisbane, CA 94005 | Richfield, MN 55423 | 818 W Seventh St Ste 930 |
| | | Los Angeles, CA 90017 |

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my client Benjamin Perez, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(A) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, and sale of Monster "Advanced High Speed," "Ultra High Speed" and "Ultimate High Speed" HDMI cables. The packaging for these products includes a "Performance Chart" and instructs consumers to "Use This Bandwidth Comparison Chart To Get The Speed You Need." The chart states that (1) "Advanced High Speed" cables with a bandwidth of ">18.0 Gbps" are needed to transmit a signal with "1080p, 120Hz, 16 Bit Color" or "4K, 30/60Hz, 8-12 Bit Color"; (2) "Ultra High Speed" cables with a bandwidth of ">22.5 Gbps" are needed to transmit a signal with "4K, 30/60Hz, 8-14 Bit Color"; and (3) "Ultimate High Speed" cables with a bandwidth of ">27.0 Gbps" are needed to transmit a signal with "4K, 60/120Hz, 8-16 Bit Color." In fact, according to HDMI Licensing, LLC, any HDMI cable with a bandwidth of 10.2 Gbps meets the minimum requirements to be labelled "HDMI High Speed" and will support all variations of 1080p or 4K functionality. Your Performance Chart deceives consumers into believing that they need to buy Monster's "Advanced High Speed," "Ultra High Speed" and "Ultimate High Speed" HDMI cables, which can cost nearly $200, in order to transmit 1080p and 4K signals. However, cables from other manufacturers with bandwidths of 10.2 Gbps and labelled "HDMI High Speed" can also transmit 1080p and 4K signals, but at a significantly reduced cost of between $5 and $20 each. The purported higher bandwidths of Monster cables, moreover, do not provide any additional benefits to consumers compared to these less expensive models from other manufacturers.

Mr. Perez, a citizen of California, is acting on behalf of a class defined as all persons nationwide who purchased Monster Advanced High Speed, Ultra High Speed or Ultimate High

Speed HDMI cables (hereafter, the "Class").  Mr. Perez purchased a Monster Ultra High Speed HDMI cable from Best Buy in 2014 in reliance on the representations on its packaging.

To cure the defects described above, we demand that you (1) cease and desist from continuing to sell Monster HDMI cables bearing misleading product claims; (2) issue an immediate recall on any Monster HDMI cables bearing misleading product claims; and (3) make full restitution to all purchasers of Monster HDMI cables.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.    All documents concerning the manufacture, design, production, and testing of Monster HDMI cables;

2.    All documents concerning the advertisement, marketing, or sale of Monster HDMI cables;

3.    All communications with customers concerning complaints or comments concerning Monster HDMI cables;

4.    All documents concerning communications with any retailer included in the sale of Monster cables relevant to the product's performance;

5.    All document concerning communications with federal or state regulators regarding Monster HDMI cables;

6.    All documents concerning the total revenue derived from the sale of Monster HDMI cables; and

7.    All documents sufficient to identify consumer purchasers of monster HDMI cables.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Joshua D. Arisohn